STOEL E. DEAN *vs.* HENRY COLT & others, executors.

A deed of warranty by which A. conveyed a mill to B. gave B. a right to take and use the water that supplied the motive power; described the original location of the canal, a hundred rods long, which conducted the water from a stream to the mill; and specified the position of a weir and waste gate in the canal, used to empty on part of A.'s adjoining land the gravel with which it occasionally became obstructed. But this location had been changed by A. so that part of the canal was on land of a railroad. After the conveyance, A., to make a head of water for another mill which he owned lower on the stream, built a dam which raised water against the bank of the canal and the weir and gate. *Held,* that, even if A. was authorized by the mill act, Gen. Sts. c. 149, to thus raise the water, provided that it did not injure the canal, yet, if it weakened the bank of the canal so as to make it an unsafe conductor of water and to render repairs reasonably necessary, or if it obstructed the proper use of the weir and gate, B. was not restricted to the mill act for a remedy, but the canal and weir and gate were so far a part of his mill that he might maintain an action at common law for the injury. *Held, also,* that if B.'s right to empty the canal upon the adjoining land was a mere easement, subject to which A. had a right to flow the land, A. was entitled to reasonable notice of B.'s intention to use the weir and gate, and to an opportunity to draw down the water so as to allow such use, before being liable to an action for obstructing it. *Held, also,* in such an action, that the change of the location of the canal by A. before his conveyance to B., and the subsequent purchase by A. of the land of the railroad included in the new location, were immaterial. *Held, further,* that B. had no right to change the position of the weir and gate so as to empty the canal upon a different part of A.'s land.

TORT for obstruction of the use of the plaintiff's waste gate and weir, and injury of the bank of his canal, by the erection, by the defendants' testator, William Pollock, of a dam across the Hoosac River, in Adams, below the plaintiff's mill. At the trial in the superior court, before *Rockwell,* J., a verdict was returned for the plaintiff; and the defendants alleged exceptions. The case is stated in the opinion.

*H. L. Dawes & T. P. Pingree,* for the defendants.

*I. Sumner & M. Wilcox,* for the plaintiff.

CHAPMAN, C. J. As the facts in this case are somewhat complicated, and do not fully appear on the face of the report, but are partly found in the documents referred to, it is necessary to recite some of them in order that the opinion of the court, in application to them, may be sufficiently understood.

The plaintiff is the owner of a factory which was formerly owned by William Pollock, the defendants' testator, and one Hathaway. On the 13th of February 1847 they conveyed it to

one Stevens. On the 29th of September 1847 he conveyed it to the North Adams Iron Company, and on the 23d of April 1849 they conveyed it to the plaintiff. It is operated by water, taken from a branch of the Hoosac River, and carried by a canal about one hundred rods long to a small pond near the factory. A weir with a waste gate was made in the side of the canal near the factory, by means of which the water could be drawn from the canal. Pollock owned another factory on the same stream, a short distance below the plaintiff's factory; and, for the purpose of increasing the water-power at the lower factory, he has, since the sale by him and Hathaway to Stevens, erected a reservoir dam, by means of which a pond is raised, one side of which sets up against the bank of the canal, and against the waste weir and gate.

The plaintiff alleges in his writ, that, by thus raising the water, the bank of the canal is weakened, and, by raising it against the waste gate, the plaintiff has been prevented from drawing the water from his canal. He alleges further that earth has been washed out and carried away around and near his mill; but it appeared that this happened only in times of extraordinary freshets; and, under the ruling of the presiding judge, no damages were given for it, and it requires no further notice.

As to the alleged injury to the banks of the canal, the report does not state distinctly in what it was proved to consist, but in his instructions to the jury the learned judge remarked that the complaint was, that the banks of the canal were weakened. We understand this remark to refer to the evidence that had been introduced.

As to the waste gate, the evidence tended to show that a small stream, called Shore Brook, emptied into the canal near its lower end, and at times brought down gravel and earth into the canal; that the waste gate was constructed and used for the purpose of clearing out this gravel and earth, by emptying the canal through it; and that the defendants' pond, by setting up against the gate, obstructed this process of clearing out the canal, so that the plaintiff can only use it when the pond is drawn down.

One. of the grounds of the defence is, that the plaintiff cannot maintain an action at law for these injuries to his canal and gate, but that his exclusive remedy is under the act for the regulation of mills, Gen. Sts. *c.* 149. But, by the second section of this act, no dam for maintaining a water mill shall be erected to the injury of any lawfully existing mill above it or below it on the same stream. The question then arises, whether the canal and waste weir, with the gate, are not a part of the mill, within the contemplation of the statute. We are of opinion that they are. The canal furnishes the motive power as really as if it were a mere flume within the building. It is a necessary part of the artificial structure; and an injury to its banks which should permit the water to escape would injure the working power of the mill as much as an injury to the flume or gate or waterwheel. A waste weir and gate which is used for the purpose of clearing out the rubbish that has partially filled the canal and obstructed the passage of the water to the factory, is so connected with the working power of the factory as to be a part of it. The section of the act above referred to is obviously designed to protect those portions of the works from being subject to be injured by flowage upon the mere payment of damages. As to the bank, its width is not stated, nor the extent to which it is weakened; but if it is injured to such an extent as to make it an unsafe conductor of the water, and to render repairs reasonably necessary, an action at law may be maintained for such injury. If the defendants desire to keep up a pond of water against it, they should first provide for its protection against the injury. As to the waste weir and gate, it does not appear that the plaintiff has occasion to use them daily or frequently, but only occasionally, when the freshets of the brook bring gravel and earth into the canal, and disturb the flow of water to the factory. His right to empty the contents of the canal upon the defendants' adjoining land appears to be a mere easement, and the defendants have a right to use this land by flowing it in any way that shall not interfere with this easement. In this respect the case is apparently like that of *Phipps* v. *Johnson, ante,* 26, where the party who had a right of way

**over** the land of another for the purpose of repairing his house was held to be under obligation to give the other notice that he was about to use the way, in order to entitle him to maintain an action for obstructing the way. It is not unreasonable to require the plaintiff to give such notice in order to render the defendants liable to an action for keeping up their pond of water against the plaintiff's gate; for they have apparently a right to keep the water there at all times when the plaintiff has no occasion to empty his canal. This principle should be stated to the jury in case it shall be applicable to the evidence upon a new trial.

The defendants set up two other defences. The deed of Pollock and Hathaway to Stevens describes the land on which the factory stands by metes and bounds, which do not include the land on which the canal is situated. The following clause is then added : " together with all the right and privilege conveyed to said Pollock and Hathaway by a deed from Daniel P. Lapham, (dated, &c.,) to which deed, for a more particular description, reference is had." The deed thus referred to is dated June 20, 1846. It conveys " the right and privilege to take the water from the Hoosac River, so called, raised by the dam erected by me, the said Lapham, through the bulkhead and ditch where the same now runs, to the factory of the said Pollock and Hathaway, on the land of the said Daniel P. Lapham, and to all the water in said river, raised by said dam, for the purpose of oper ating machinery in their said factory, if required. Also the right and privilege to go up the bank of said ditch from said factory, in a careful and prudent way and manner, with teams, to the river aforesaid, and get the sand and gravel from the bank thereof to repair said ditch and dam at all times when necessary."

Lapham at that time owned the land on which the defendants subsequently built their reservoir dam, and the land which is overflowed by their reservoir pond, together with some adjoining lands. On the same day he conveyed a part of his land to the Pittsfield and North Adams Railroad Company, " reserving t₄ Pollock and Hathaway all the rights of conducting water by

ditch across the above described premises." And he also con-veyed the land now covered by the defendants' reservoir dam and pond to Pollock and Hathaway. In the fall of the same year, Pollock and Hathaway, by the permission of the railroad company, changed the direction of the canal, and located a part of it, including the waste weir and gate, on the land of the rail-road company. This part of the canal was thus situated on the land of the railroad company on the 13th of February 1847, when the deed above mentioned was made by Pollock and Hathaway to Stevens. Of course the deed to Stevens could give him no right to maintain the canal on the land of the com-pany, except such as resulted from the parol assent given by the company to the change of location, which would be a mere license.

The defendants contend that this license was revocable, and has been revoked by the railroad company. The alleged act of revocation consists in the execution of a deed of quitclaim, given by them November 1, 1847, to Pollock and William C. Plunkett, bounding on the west bank of the canal, and including the land covered by the defendants' dam and pond. The report leaves it in doubt whether this tract covers any part of the canal. If it does not, and the canal is on the land which still belongs to the railroad company, the defendants have no right to question the plaintiff's title to maintain his canal upon it. That right be-longs to the company, and the title is good as to the defendants. If that tract does include the canal, still it is not necessary to determine whether the deed would authorize Pollock and Plun-kett to change the canal and restore it to its former place. The deed of Pollock and Hathaway to Stevens expressly conveys the right to take the water of the river to the factory from the dam, through the bulkhead and ditch then existing. The fact that the grantors had, under a parol license, altered a part of the ditch or canal, by placing it on the lands of the railroad com-pany, would not justify the defendants in obstructing the flow of water from the river to the mill in some way, and through some channel; for the deed of Pollock and Hathaway grants a right to the use of the water in addition to the grant of the

rights derived from Lapham's deed, and to obstruct this use would be a violation of the right thus granted. The defendants contend that the subsequent grant of the railroad company to Pollock and Plunkett did not inure to the benefit of Stevens and his grantees by way of estoppel. We need not decide this point. Nor is it necessary to apply to the case the doctrine stated in *Larned* v. *Larned*, 11 Met. 421, and *Pope* v. *Devereux*, 5 Gray, 409, that the substitution, by parol agreement, of a new way for an old one which is abandoned, is a dedication of the new way, and is irrevocable. Nor is it necessary to deny the doctrine stated in *Morse* v. *Copeland*, 2 Gray, 302, that a parol license to create an easement on the land of the licensor is revocable ; or to discuss the questions, relative to the character of such licenses, which are suggested in Washburn on Easements, 200, 201 ; for the right of the plaintiff to take and use the water is granted to him with warranty by Pollock, and is not dependent upon the precise locality of the canal. If Pollock afterwards disturbed the flow of the water by weakening the banks of the canal, without providing some other channel, he committed a tort ; and the same is true if he obstructed the emptying of the canal through the waste gate. It is no excuse for him to say that when he made the deed to Stevens his only title to maintain the canal where it then was consisted of a mere parol license from the railroad company. If it be admitted that the company had a right to revoke that license, and that he afterwards purchased their right to revoke it, still he had no right to do any act in violation of his grant of the water, which was with warranty of the right to use it. This ground of defence cannot therefore prevail.

But the defendants further offered to prove that the plaintiff had moved a part of the canal and waste weir, after the conveyance to him. The statement of this part of the case in the report is not very clear. But it appears that the court ruled that such evidence was immaterial. This ruling involves the idea that the plaintiff might legally close his existing waste gate, and construct a new one in a different place, and thereby empty the contents of the canal on another portion of the defendants' land.

But no such right was granted in the deed under which he claims, and he has no easement of this character except what is there granted. Such evidence was therefore material, and should have been admitted. If the defendants' pond merely obstructs the passage of the water and gravel through a new gateway, which was made subsequently to the conveyance to Stevens, they have not thereby violated any right of the plaintiff. The ruling on this point was therefore erroneous.

*Exceptions sustained.*